**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHMOUD ABURADWAN, <br><br> *Plaintiff*, <br><br> v. <br><br> GREGORY E. RAMIREZ, THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF SANITATION, <br><br> *Defendants*. | Civil No.: 24-cv-6007 (KSH) (JSA) <br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

　　This personal injury action arises from a motor vehicle crash involving a vehicle driven by plaintiff Mahmoud Aburadwan ("plaintiff") and a commercial sanitation truck driven by defendant Gregory E. Ramirez ("Ramirez") for defendant City of New York (the "City," and with Ramirez, "defendants").[1]  Defendants have moved for judgment on the pleadings in their favor based on plaintiff's failure to serve a notice of claim, which defendants characterize as a condition precedent to suit.  Plaintiff opposes on the ground that he was not required to serve a notice of claim.  The matter is fully briefed and is decided without oral argument.

**II.     Background**

　　The complaint alleges that on December 23, 2022, plaintiff was stopped in traffic on the New Jersey Turnpike in Jersey City, New Jersey.  (D.E. 1-1, Compl. ¶ 6.)  Ramirez, driving a City sanitation truck, collided with the vehicle in front of it, which caused plaintiff's car to be

---

[1] The complaint named both the City of New York and the New York City Department of Sanitation as defendants.  According to defendants, the New York City Department of Sanitation is not a separate entity but rather a department within the City government.

1

struck from the rear, seriously injuring him. (*Id.* ¶¶ 7-8.) Plaintiff asserts that the collision was the result of Ramirez's negligence, for which the city is also liable. Plaintiff filed suit on November 13, 2023, in the Superior Court of New Jersey, Law Division, Hudson County, and defendants answered on February 16, 2024. (*See* D.E. 1-2, Answer.) On April 10, 2024, defendants filed a motion to dismiss for failure to state a claim, arguing that plaintiff had failed to serve a notice of claim within 90 days after the claim arose, and that such a notice is a condition precedent to suing the City and its employees. (D.E. 1-3, State Court Mot. to Dismiss.)

Five days later, on April 15, 2024, plaintiff served responses to defendants' interrogatories. (D.E. 1-4, Plf. Interrog. Resp.) In the cover letter, plaintiff demanded that defendants withdraw their motion to dismiss, along with a number of their affirmative defenses,[2] as frivolous. On May 10, 2024, defendants removed the action to this Court on the basis of diversity jurisdiction, and asserted that the case became removable upon their receipt of plaintiffs' interrogatory responses, which allegedly disclosed for the first time that plaintiff was seeking damages in excess of the jurisdictional threshold. (D.E. 1, Notice of Removal at 2-3.)

Following removal, defendants sought, and were granted, leave to re-file their motion here. (D.E. 7, 8.) In the renewed motion, they argue that "[a] condition precedent to commencement of a tort action against the City . . . and its employees is that a would-be Plaintiff must serve a notice of claim within [90] days after the claim arises," and that this is a substantive element of the cause of action and must be affirmatively pleaded. (D.E. 9-1, Moving Br. 1.) Because plaintiff's complaint did not plead compliance with the statute, and the time to seek leave to serve a late notice of claim has expired, defendants continue, the complaint must be

---

[2] This included the eighth affirmative defense asserted in defendants' answer, failure to state a claim; the fifteenth, statute of limitations; and the twenty-second, comity.

dismissed with prejudice.

In opposition, plaintiff argues that he has asserted a plausible claim for negligence; that the tort claims notice requirement of the New Jersey Tort Claims Act does not apply because defendants are not public entities under that statute; that "New York law cannot and does not apply to a New Jersey State Court action"; and that defendants' motion is "facially deficient" for not engaging in a choice-of-law analysis. (D.E. 10, Opp. Br. 1-2.) Plaintiff also accuses defendants of engaging in "frivolous conduct" and of "wasting precious judicial resources by filing multiple motions." (*Id.* at 2.)

In their reply, defendants argue that the notice of claim requirement in New York General Municipal Law § 50-e(1) and § 50-i(1) should be applied in this Court as a matter of comity, and that no choice-of-law analysis is required. (D.E. 11, Reply Br.)

## III.   Standard of Review

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial." A motion under Rule 12(c) is governed by the same standards as a Rule 12(b)(6) motion: the Court "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)). The motion is properly granted if based on the pleadings, "the movant is entitled to judgment as a matter of law." *Id.* (quoting *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019)). As with Rule 12(b)(6) motions, the Court is generally confined to considering the complaint allegations and exhibits, matters of public record, and documents

3

forming the basis of the claim. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

## IV. Discussion

The dispositive issue is whether a New Jersey federal court sitting in diversity jurisdiction must apply a New York law's notice of claim requirement to a New Jersey tort claim asserted by a New Jersey plaintiff for a motor vehicle accident in New Jersey, because the defendants are a New York municipal entity and its employee. In short, defendants are asking that the Court apply New York law to the plaintiff's personal injury claim, while plaintiff argues that New Jersey law applies and does not impose a notice of claim requirement as a condition precedent to suit against these defendants.

The starting point is that federal courts sitting in diversity apply federal law to procedural issues and state law to substantive issues. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). With respect to choice of law specifically, the Court "generally applies the choice-of-law rules of the jurisdiction in which it sits," *Amica Mut. Ins. v. Fogel*, 656 F.3d 167, 170-171 (3d Cir. 2011), which here means applying New Jersey's choice-of-law rules.

For personal injury cases, New Jersey applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, which starts with a presumption that the substantive law of the place of injury is the governing law; that presumption is only overcome if "some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts under section 145 [of the Second Restatement] and the guiding principles enunciated in section 6 [of the Second Restatement]." *McCarrell v. Hoffmann-LaRoche, Inc.*, 227 N.J. 569, 590 (2017) (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 141, 144-45 (2008)); *accord In re Accutane Litig.*, 235 N.J. 229, 235, 257 (2018)

4

(stating that *Camp Jaycee* adopted the most significant relationship test "as the paradigm for deciding which state's substantive law applies in personal injury cases involving more than one state" and that this test "embodies all the elements of [New Jersey's] former governmental-interest test and 'adds a series of other factors deemed worthy of consideration'"). The "contacts" in § 145, which "are to be evaluated according to their relative importance with respect to the particular issue," include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971). The principles in § 6 include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The New Jersey Supreme Court has stated that the § 6 principles, "[r]educed to their essence," are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (cleaned up). The interest in interstate comity, in turn, "seeks to 'further harmonious relations between the states and to facilitate commercial intercourse between them,'" and "considers 'whether application of a competing state's law would frustrate the policies of other interested states." *Id.* at 152 (citations omitted).

All of the foregoing depends on whether there is an actual conflict between the two

states' laws, meaning "when the application of one or another state's law may alter the outcome of the case, or when the law of one interested state is offensive or repugnant to the public policy of the other." *In re Accutane*, 235 N.J. at 254 (cleaned up).  If there is no actual conflict, "there is no choice-of-law issue to be resolved." *Camp Jaycee*, 197 N.J. at 143.

Defendants contend that there is no choice-of-law issue to resolve here—and that they need not offer a choice-of-law analysis—because New Jersey state courts follow principles of comity, which is the basis for applying a New York statute protecting New York governmental entities to this case in New Jersey federal court.  They point to similarities between New York's law and New Jersey's Tort Claims Act (the "Act") as support for the notion that the two states' interests and public policies are in accord.

Defendants concede that the Act does not, by its terms, cover New York public entities. (*See* D.E. 11, Reply Br. 6.)  The Act does not, therefore, add a notice-of-claim element to plaintiff's negligence claim here.  *Cf. Spencer v. Princeton Univ.*, 2024 WL 575103, at *1 n.2 (3d Cir. Feb. 13, 2024) (stating that the Act's notice of claim requirement is substantive (rather than procedural), such that it is properly applied in a federal court).  The absence of a notice of claim is the sole basis for defendants' motion for judgment on the pleadings; they have not argued that the complaint fails to adequately plead the other elements of the negligence claims asserted.  So if New Jersey substantive law applies, there is no articulated basis for dismissing the complaint at the pleadings stage.  If, however, New York law (specifically the N.Y. General Municipal Law's notice of claim requirement) applies, according to the New York case law defendants cite, plaintiff's failure to plead compliance with the requirement plus the expiration of time to seek an extension to serve such a notice would require the dismissal of the complaint. This would appear to create a conflict, necessitating a choice-of-law analysis.

Defendants' singular focus on comity, which is only one aspect of New Jersey's choice-of-law test, makes their arguments of limited utility. They do not acknowledge, for example, the presumption that New Jersey law will apply because plaintiff was injured in this state. They address to some extent certain policies and interests of New York and New Jersey (which are part of the analysis under § 6 of the Second Restatement), but not against the initial presumption, and not with an eye to how all of this fits together under the "most significant relationship" test. In short, the record does not currently compel the conclusion that defendants are "entitled to judgment as a matter of law," *Bibbs*, 43 F.4th at 339, and their motion must be denied.

That denial will, however, be without prejudice to renewal, if appropriate, and at the appropriate juncture. Defendants have brought to the Court's attention a case working its way through the New Jersey courts, captioned *Williams v. Ferro*, MID-L-1566-21, which, like this case, involved a New Jersey-resident driver suing a New York municipal entity and the city's sanitation department, as well as the driver of a garbage truck (a city employee), for a motor vehicle crash in New Jersey. The trial judge in that case addressed the same question before this Court: whether the New York notice of claim requirement applies in New Jersey court (albeit there, in state court) and decided it does. That ruling is now pending before the New Jersey Appellate Division. In other words, in the only New Jersey case the parties have pointed to that has addressed this precise question, an intermediate appellate court is about to rule on it.

In applying state substantive law, and here state conflict-of-law rules, this Court looks to how the New Jersey Supreme Court has ruled on the issue; if it has not ruled on the issue, this Court must predict how it would rule if presented with the case. *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). "In predicting how the highest state court would decide an issue, [the Court] look[s] to analogous state court cases and in the absence of an authoritative

7

pronouncement by a state's highest court," the Court may "give serious consideration to the opinion of an intermediate appellate court." *Id.* (cleaned up).  Given the role of the state's interests and policy judgments in the choice-of-law analysis above, the Appellate Division's ruling in *Williams* will be significant.[3]

At the next conference before Magistrate Judge Allen, therefore, the parties shall be prepared to address the status of the *Williams* case, whether this case should be stayed pending the Appellate Division's ruling in *Williams*, and what discovery, if any, is necessary for an appropriate choice-of-law analysis.

### V.    Conclusion

Defendants' motion for judgment on the pleadings is denied without prejudice.  An appropriate order will issue.

|  |  |
|---|---|
|  | /s/ Katharine S. Hayden |
| Date: December 30, 2024 | Katharine S. Hayden, U.S.D.J. |

!

---

[3] There is no suggestion that the Court should, or must, abstain from exercising its jurisdiction while the *Williams* case is pending, and indeed the parties may choose not to await that decision in any renewed motion practice on the issue.  What is necessary, however, is a comprehensive choice-of-law analysis whereby both parties state their positions within the appropriate legal framework.